UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER J. THORPE,

    Petitioner,

v.                                            Case No. 4:20cv408-WS-HTC

SECRETARY DEPARTMENT
 OF CORRECTIONS,

    Respondent.

_____/

REPORT AND RECOMMENDATION

    Petitioner Christopher J. Thorpe, through counsel, filed a petition under 28 U.S.C. § 2254 challenging his conviction in the circuit court of Leon County, Florida, for sexual battery, in case 2012-CF-1190. ECF Doc. 1. After considering the petition, the record, the State's response, ECF Doc. 7, and Petitioner's reply, ECF Doc. 13, the undersigned recommends the petition be DENIED without an evidentiary hearing.

**I.    BACKGROUND**

    Petitioner, a masseuse, was charged with three counts of sexual battery which took place during a massage session on April 2, 2012. At trial, the victim, J.W., testified that during her only massage session with Petitioner, Petitioner—without her consent—inserted his finger "into her," performed oral sex on her, and had

intercourse with her. She testified she "just froze" during the incident, other than "shouting out" to Petitioner at one point about whether he had a condom. ECF Doc. 7-2 at 204-15. Shortly afterwards, after her friends, mother and supervisor were able to calm her down, she reported the incident to authorities. *Id.* at 222-23.

On July 3, 2013, a jury found Petitioner guilty of sexual battery. ECF Doc. 7-1 at 54. On September 27, 2013, the state court sentenced him to 20 years' imprisonment followed by 10 years' probation. *Id.* at 200. Petitioner appealed his judgment to the First District Court of Appeals ("First DCA"), which affirmed *per curiam* without a written opinion on January 20, 2016, and denied rehearing on February 29, 2016. *Thorpe v. State* (1D13-4711), 185 So. 3d 1239 (Fla. 1st DCA 2016); ECF Doc. 7-7 at 4. Petitioner sought discretionary review in the United States Supreme Court which was denied on October 3, 2016. The conviction became final on that date.[1] *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari). The AEDPA clock began running for sixty (60) days until December 2, 2016, when Petitioner filed a Rule 3.800 motion, ECF Doc. 7-9 at 65. The state

---

[1] Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), 28 U.S.C. § 2244, et seq., as amended, a federal habeas petition must be filed within one year of certain trigger dates. For the purposes of this petition, the pertinent trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Additionally, the one-year time period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

court denied that motion on December 7, 2016.[2] *Id.* at 103.  The AEDPA one-year limit began running again, and ran for 292 more days until Petitioner, through counsel, filed a Rule 3.850 motion on September 26, 2017.  ECF Doc. 7-9.  That motion was continuously pending until August 11, 2020, when the First DCA issued its mandate affirming the circuit court's decision.  ECF Doc. 7-13 at 2.  Petitioner filed the instant federal petition six (6) days later, on August 18, 2020.  ECF Doc. 1.  Because 365 days had not yet expired on the AEDPA clock, the petition is timely.

## II.   LEGAL STANDARDS

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28 U.S.C. § 2254.  Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

This standard is both mandatory and difficult to meet.  *White v. Woodall*, 572 U.S. 415, 419 (2014).  "Clearly established federal law" consists of the governing

---

[2] The electronic docket sheet for Petitioner's Leon County Case 2012-CF-1190 shows that Petitioner filed a motion for rehearing of the 3.800 motion which was docketed on December 23, 2016.  Dkt. 209 in *State v. Thorpe*, 2012-CF-1190 (Dec. 23, 2016).  The docket is not clear as to when the motion was denied, but this makes no difference to the timeliness analysis because the Petition would be timely even if no motion for rehearing were filed.

Case No. 4:20cv408-WS-HTC

legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.*; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## III.  DISCUSSION

For the reasons set forth below, the undersigned finds Petitioner has not shown the state court rulings were contrary to law or resulted from an unreasonable determination or application of facts.

### A.  Ground One: Trial Court Erred by Allowing the State to Present Investigator's Testimony That Other Clients Had Alleged That Petitioner Engaged in Inappropriate Sexual Conduct During His Massages.

During trial, the State called lead investigator, Sonya Bush, as a witness. Investigator Bush testified that on April 5, 2012, the Defendant voluntarily appeared at police headquarters with his attorney and gave a video recorded interview. ECF Doc. 7-1 at 70-165. The State did not initially offer the recorded interview in evidence or play it for the jury. Instead, the State asked Investigator Bush, "he told you that they basically had sex, right?" and Bush responded in the affirmative. ECF Doc. 7-1 at 77.

On cross-examination, defense counsel asked Investigator Bush if Petitioner had also told her during the interview how the massage turned into consensual sex. *Id.* at 320-21. The State objected on the ground that those statements to the investigator were self-serving hearsay. *Id.* Defense counsel responded that even so, it was necessary to admit them because the investigator's testimony that Petitioner just said in the interview that they "had sex" was not complete and could mislead the jury. *Id.* at 80-83 & 91. After listening to the parties' argument, the trial court

determined, for completeness, the jury should be allowed to hear that part of the interview where Petitioner explained the incident. *Id.* at 113. However, at that point, the State argued the jury should be allowed to hear the entire interview. *Id.* at 118-19. The defense did not object, other than to seek redaction of parts of the recording containing attorney-client privilege or references by Investigator Bush to witness tampering.

Thus, with those agreed-upon redactions, the entire recorded interview was played for the jury. On the video, after Petitioner explained the massage routine and insisted that the sex was consensual, the investigator asked him, "Have you ever had sex with any of your clients?" The Petitioner answered, "No." *Id.* at 135. Then, when the investigator asked, "Why this one?", Petitioner claimed, "I've never had this issue with a client" and stated, "This is really out of character for me to even go there with this client." *Id.* at 135-36.

When the State resumed its examination of Investigator Bush, the prosecutor asked, "[I]sn't it true the defendant's been charged with sexual battery on another client in the course of a massage?" *Id.* at 140. Counsel for the Defendant objected, arguing the State invited a mistrial, that the trial court had already ruled the evidence regarding the charge of sexual battery in a different Leon County Circuit Court case

was not admissible as similar fact evidence,[3] that the State's questioning was not a proper form of impeachment, and that it was being offered merely to show propensity and did not go to the Defendant's veracity. *Id.* The State argued Defendant's statements in the video "opened the door" to the State's questions. *Id.* The trial court agreed and allowed the State to inquire about other incidents of inappropriate sexual conduct. *Id.* at 148-50.

When the State again resumed its examination of Investigator Bush, the prosecutor asked if the investigator had received any other complaints of inappropriate sexual conduct during a massage with the Defendant. The investigator informed the jury that one person had filed a police report which referenced 8 women complaining about inappropriate sexual conduct committed by Petitioner during massages, none of which, other than as to the person who filed the report, rose to the level of criminal conduct. Petitioner argues this testimony violated his rights under the Confrontation Clause of the Sixth Amendment and Due Process Clause of the Fourteenth.

---

[3] The State had filed a notice of intent to introduce similar fact evidence, namely a similar charge against Petitioner for sexual battery on another victim, which case was still pending at the time of trial. The defense filed an opposing motion *in limine*. ECF Doc. 7-1 at 36. The circuit court denied the State's motion and granted the defense motion *in limine* under *Williams v. State*, 110 So. 2d 654 (Fla. 1959), finding the other incident was neither material nor similar given the question of consent in the instant case.

Case No. 4:20cv408-WS-HTC

1. <u>Petitioner Exhausted This Claim</u>

Respondent argues Petitioner failed to exhaust this issue in his direct appeal because Petitioner couched his claim in his initial brief in terms of state court error. ECF Doc. 7 at 23-24. The undersigned disagrees. "[T]o exhaust state remedies fully, the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015). A petitioner "need not use magic words or talismanic phrases to present his federal claim to the state courts." *Id*. A petitioner can exhaust a claim by, for example, "including ... 'the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].'" *Lucas v. Sec'y, Dep't of Corr.,* 682 F.3d 1342, 1351 (11th Cir.2012) (quoting *Baldwin v. Reese,* 541 U.S. 27, 32 (2004)). A petitioner "is not required to cite 'book and verse on the federal constitution.'" *Id.* at 1352 (quoting *Picard v. Connor,* 404 U.S. 270, 278 (1971)). Nor is a court so "draconian or formalistic as to require petitioners to give a separate federal law heading to each of the claims they raise in state court to ensure exhaustion for federal review." *Kelley v. Sec'y for Dep't. of Corr.,* 377 F.3d 1317, 1344 (11th Cir. 2004).

The undersigned finds Petitioner met this standard for exhaustion. In his initial brief on appeal, Petitioner specifically referenced the United States Constitution as a basis for his claim in several places. First, he argued, "The [investigator's] testimony violated Appellant Thorpe's constitutional right to

Case No. 4:20cv408-WS-HTC

confront these alleged accusers. The Sixth Amendment provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' U.S. Const. amend. VI. See also art. I, § 16, Fla. Const." ECF Doc. 7-4 at 26-27. He also argued, "Constitutional due process principles prohibit the prosecution from relying on a criminal defendant's past conduct to prove that the defendant committed the crime in question. See U.S. Const. amends. V & XIV; art. I, § 9, Fla. Const." Moreover, in the final footnote in the section on this issue in the initial brief, Petitioner argued, "The trial court's erroneous ruling resulted in Appellant Thorpe being denied his constitutional right to a fair trial. *See* U.S. Const. amends. V & XIV; art. I, § 9, Fla. Const." *Id.* at 34 n.17. Therefore, the undersigned finds Petitioner made clear the federal nature of his claim and exhausted this claim.

2. Ground One Fails on the Merits

Petitioner argues the trial court erred in allowing Investigator Bush to testify about complaints of misconduct by other women because (a) the State cannot open its own door; (b) the testimony was based on hearsay; (c) the allegations were improper impeachment; (d) the probative value did not outweigh the prejudice; and (e) the error was not harmless. Accordingly, he argues Investigator Bush's testimony violated his Fifth and Fourteenth Amendment rights.

Because the First DCA affirmed the judgment without issuing a written order, the Court will "look through" the unexplained decision of the First DCA to the last

related state-court decision that did provide a relevant rationale of each claim.[4] *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The trial judge's comments and rulings during trial constitute the last decision to provide a relevant rationale, and the Court will presume the First DCA applied the same rationale and apply the deference due under 28 U.S.C. § 2254(d). Although Petitioner has exhausted Ground One, for the reasons discussed below he is not entitled to relief on it.

As an initial matter, a trial court's evidentiary ruling does not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial. *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). A petitioner must show the ruling was more than merely erroneous; it must have had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (applying the harmless error standard for federal habeas review of constitutional error set forth in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). On federal habeas corpus review regarding a state court's decision to admit or exclude evidence, the court will "determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.'" *Hill v. Sec'y, Florida Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) (unpublished) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989)).

---

[4] The Court will also "look through" the First DCA's decision as to Ground Three.

Case No. 4:20cv408-WS-HTC

Here, the trial court determined the probative value of allowing Investigator Bush to answer a question about similar charges against him outweighed any prejudicial effect and was necessary to cure what the court determined to be a misleading statement made by Petitioner in the recorded interview. Specifically, the state court concluded Petitioner's statement that he had not had a similar issue with another client "led [the] jury to believe he's never had inappropriate contact with anybody else," ECF Doc. 7-1 at 148, and it "[was] not fair to let the jury think that that statement is necessarily true." *Id.* at 149-50.

Under the "opening-the-door" doctrine, when a party offers inadmissible evidence before a jury, the court may in its discretion allow the opposing party to offer otherwise inadmissible evidence on the same matter to rebut any unfair prejudice created. *Crawford v. United States*, 198 F.2d 976, 978–79 (D.C. Cir. 1952) (the doctrine rests "upon the necessity of removing prejudice in the interest of fairness"); *see also Rodriguez v. State*, 753 So. 2d 29, 42 (Fla. 2000) ("As an evidentiary principle, the concept of 'opening the door' allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted.") (quoting *Tompkins v. State*, 502 So.2d 415, 419 (Fla. 1986) and citing *Huff v. State*, 495 So.2d 145, 150 (Fla. 1986)). Although Petitioner argues it was the State, rather than Petitioner who opened the door, the state court's determination to the contrary did not result in a fundamental error. Petitioner's case came down to consent, and, regardless of whether the jury heard

about other complaints against Petitioner, the victim testified she did not consent to any of the sexual conduct that occurred, and the jury heard her testimony about her being upset and crying immediately after the event, and of her immediately reporting the incident to the authorities.

Petitioner is therefore not entitled to relief on this Ground.

**B.    Ground Two: Ineffective Assistance of Trial Counsel ("IATC") by "Opening the Door" to the Admission of Otherwise Inadmissible Evidence.**

Petitioner argues counsel's insistence on playing for the jury the recording of the investigator's interview with Petitioner was deficient because the door was thereby opened for the State to introduce evidence that "at least eight women" had accused Petitioner of misconduct. Petitioner raised this ground in his 3.850 motion and appeal of its denial to the First DCA; thus, it is exhausted.

An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. A petitioner bears the burden of proving that counsel's

performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. A petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the Petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Applying *Strickland,* the circuit court denied relief on this ground because a "review of the entire record clearly demonstrates that defense counsel made a tactical decision to play the recorded statement of Defendant." ECF Doc. 7-9 at 36. Namely, "[t]he playing of Defendant's tape-recorded statement to Investigator Bush gave the defense an opportunity to attempt to establish consent on the part of the victim without subjecting Defendant to cross examination by the State." *Id.* The First DCA affirmed on the same basis. *Thorpe v. State*, 298 So. 3d 1289, 1290 (Fla. Dist. Ct. App. 2020) (citing *Schoenwetter v. State*, 46 So. 3d 535, 554 (Fla. 2010) ("Reasonable decisions regarding trial strategy, made after deliberation by a claimant's trial attorneys in which available alternatives have been considered and rejected, do not constitute deficient performance under *Strickland*.")); *see also Bruno v. State*, 807 So. 2d 55, 68 (Fla. 2001) ("Counsel's performance in this case

Case No. 4:20cv408-WS-HTC

may not have been perfect, but it did not fall below the required standard.")).  The state courts' decisions were neither contrary to law nor a misapplication of the facts.

Petitioner's defense was that he and the victim had consensual sex.  To establish this defense, counsel had to either put Petitioner on the stand or have his recorded statement played for the jury.  If Petitioner had taken the stand, he would have been subject to rigorous examination by the State.  By playing the recording, the jury could hear Defendant's side of the story without Defendant having to testify.

Relying on counsel's testimony at the 3.850 evidentiary hearing, Petitioner argues counsel did not make a strategic decision to have the entire recording played; instead, Petitioner argues counsel allowed the entire recording to be played because he did not remember the full extent of Petitioner's comments regarding not having this issue with anyone other than J.W.  Petitioner's argument, however, overlooks counsel's testimony that he cannot control what the court does on evidentiary rulings; that is, that he could not control whether the court would allow the follow-up questions to Detective Bush after Petitioner's words were played to the jury.

In other words, once the State moved to have the entire recording played, counsel was put in a position of having to choose between the risks if all of it were played or if none of it were be played.  If counsel chose the latter, he would have no evidence to present to the jury to rebut the victim's testimony that she did not consent.  Thus, counsel chose to have the recording played, knowing he could not predict the state court's subsequent evidentiary rulings and, also, knowing the state

Case No. 4:20cv408-WS-HTC

court had already denied the State's motion to allow evidence of the other criminal charge into evidence (making it more likely the state court would also not allow the follow-up questions to Investigator Bush). Viewed in this context, counsel's decision was not unreasonable simply because it did not turn out the way he had wished.

Favoring one defense strategy over another is almost never a basis for finding ineffective assistance of counsel. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. Thus, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "*Strickland* mandated one layer of deference to the decisions of trial counsel. . . . When § 2254(d) was amended by AEDPA in 1996, that added another layer." *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019). Given the deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011). This is not one of those rare cases. Petitioner is not entitled to habeas relief on this Ground.

### C. Ground Three: Trial Court Erred by Denying Petitioner Thorpe's Motion for a Judgment of Acquittal

Petitioner argues the state court's denial of his motion for judgment of acquittal violated the Sixth and Fourteenth Amendments to the U.S. Constitution. He contends that under *In Re Winship*, 397 U.S. 358 (1970), the evidence in his case was insufficient to sustain the jury's verdict of guilty beyond a reasonable doubt because the State failed to present any evidence of a lack of consent to the sexual battery.

As an initial matter, claims challenging a state court's denial of a judgment of acquittal based on sufficiency of the evidence "do not raise a federal constitutional claim and therefore do not state a basis for federal habeas corpus relief." *Luis Agosto v. Sec'y, Dep't of Corr.*, 2019 WL 2904727, at *8 (M.D. Fla. July 5, 2019) (claims the state trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that the victim sustained "great bodily harm" do not raise a federal constitutional claim). "A state's interpretation of its own laws provides no basis for federal habeas corpus relief since no question of a constitutional nature is involved." *Id.* (citing *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992)). Since the instant claims address whether the evidence was sufficient to prove lack of consent under Florida law, they do not raise federal constitutional issues.

Second, Petitioner procedurally defaulted any federal due process claim by failing to raise it to the trial court. Instead, at the end of the State's case, defense counsel simply argued "the State has not met its burden beyond a reasonable doubt that the victim -- that Mr. Thorpe committed sexual battery, certainly on three counts against [the victim]." ECF Doc. 7-2 at 414. The trial court denied the motion, finding the victim's testimony created a jury question as to whether the State had met its burden of proof on the elements of the crime. *Id.* Because Petitioner did not present a federal due process argument to the trial court when he moved for judgment of acquittal, this ground for relief is not exhausted and Petitioner is not entitled to habeas relief on this Ground.

## IV. CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

B. **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case No. 4:20cv408-WS-HTC

Accordingly, it is respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Thorpe*, 2011-CF-1190, in Leon County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of December, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.